## Childers v. Belcher.

(Decided March 7, 1911.)

### Appeal from Pike Circuit Court.

Lands—Action to Quiet Title—In an action to quiet title, the question was, whether or not two adjoining landowners established a certain conditional line. Held, upon an examination of the record that the evidence sustains the finding of the chancellor that the conditional line had been established.

A. F. CHILDERS and J. E. CHILDERS for Appellant.

J. S. CLINE and J. M. BOWLING for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

About twenty-five years ago, Isaac Cantrill and Jackson Moore were owners of adjoining land in Pike county, Kentucky. Several years later Jackson Moore died, leaving a widow and six children. In a short time his widow also died. Three of the children of Jackson Moore sold their interests in the farm, which their father owned, to appellant Childers, and executed to him a deed therefor. Appellee Belcher bought out the interests of two of these children; the sixth child, Farris Moore, retained his interest. A few years before the institution of this action, commisioners were appointed to divide the Jackson Moore farm among those entitled thereto. Appellant Childers and Isaac Cantrill were present when the division was made. Childers agreed that a line should be run through the land, and that the children should be given the choice of halves. The infant children, by their guardian, elected to take the land lying on the left-hand side. It appears that the land in controversy in this action was not included in the division.

KENTUCKY REPORTS.

This was probably due to the fact that appellant and Isaac Cantrill claimed that it did not belong to Jackson Moore.

Appellee, J. W. Belcher, brought this action to recover the land in controversy, evidently proceeding on the idea that, by his purchase from one of the Moore heirs, he acquired title to the entire tract. During the progress of the action he bought out the interest of another of the heirs. He charged in his amended petition that the land in controversy belonged to Jackson Moore at the time of his death and descended to his children. He also pleaded that the land was on the Moore side of the conditional line which had been established between him and Isaac Cantrill and had been recognized by the parties for more than fifteen years. The trial court was of opinion that the conditional line was established as claimed by appellee, and held that appellee was entitled to recover of appellant two-sixths of the land. He further held that the infant, Farris Moore, was the owner of a one-sixth undivided interest in said land, while appellant was the owner of an undivided one-half interest therein. From this judgment Childers has appealed, and Belcher has prosecuted a cross-appeal.

Appellant did not set up his interest in the land in controversy by virtue of his purchase from the three Moore heirs, but claimed title to the whole of the land through conveyances from Isaac Cantrill to his son-in-law, Thomas Collins, and from Collins and wife to himself.

Isaac Cantrill gave three depositions. In one deposition he testified that he owned land adjoining that in controversy. He and Jackson Moore met about twenty or twenty-one years before he testified, to make a division line. They went up the Big Branch near where the Falls Spring then was; thence up the hill on the left-hand side to the top of the hill between the Big Branch and the Panther Branch. They then went to a small chestnut on the top of the hill between said branches. By agreement they ran a line due north towards the creek known as the Big Branch to a beech on the bank of the creek standing near the tail of the Falls Spring. This beech was marked. When he sold his mineral he sold to that line. He claimed and exercised ownership up to that line. The division line was not continued on account of Jack Moore being tired. Each of them recog-

nized the other's ownership up to that line. Cantrill claiming nothing above, and Moore nothing below it. In his other two depositions Cantrill claimed that, after they had marked the conditional lines for a certain distance, Moore became tired and wanted to quit, and they then agreed to have no more of it. They never finished the conditional line. The way the line was marked, Moore got a portion of Cantrill's land, while Cantrill secured none of Moore's. It is earnestly insisted by appellant that this evidence of Cantrill's is not sufficient to show that the conditional line in question was actually established. While it is true that Cantrill varied his testimony, perhaps, because it was to his interest to claim that no conditional line was established, it appears from the testimony of other witnesses that he and Moore for upward of fifteen years actually recognized the line fixed by the judgment of the trial court as the conditional line between them. Upon a careful consideration of all the evidence, we see no reason to disturb the judgment in this respect. If, then, the land in controversy was on Jackson Moore's side of the conditional line, it follows that, upon his death, the land descended to his heirs. That being true, appellant acquired no title by virtue of his purchase through Collins and Cantrill.

There is no merit in the contention of appellee, that he is entitled to all of the land in controversy, because appellant elected to take the land on the right-hand side of the division line fixed by the commissioners. As the land in controversy was not included in the division, the title thereto necessarily remained in the heirs of Jackson Moore, and the vendees of the heirs who had disposed of their interest.

Nor do we see any reason for reversing the judgment because the court adjudged all costs against appellant. He denied that appellee had any interest at all in the land, and he claimed title, not by virtue of his purchase from the Moore heirs, but by virtue of his purchase through Collins and Cantrill. Appellee recovered of appellant to the extent of two-sixths of the land in controversy. Under these circumstances, we conclude that he was entitled to a judgment for costs.

Upon the whole case, we think the trial court did substantial justice.

The judgment is affirmed, both on the original and cross appeal.