## Shanahan, et al. v. McIntire.

(Decided March 15, 1916.)

### Appeal from Washington Circuit Court.

1. Ejectment—Evidence—Court's Findings Sustained.—In an action in ejectment, evidence examined and held to sustain findings and judgment of the trial court.

2. Judgment—Matters Concluded By—Title to Land.—Where, in an action brought in the same court against the present plaintiff and his brother by the vendor of the present defendant, involving the title to the same land now in controversy, the judgment established the line as now claimed by the plaintiff and as fixed by the court in this case; defendants, claiming title under their vendor, can show no better right thereto than was shown by him in the former action, hence, as the judgment in that action would bar any recovery of the land by him, it will bar such recovery by them.

3. Ejectment—Judgment—Costs.—Where the plaintiff in ejectment recovers any part of the land sued for by him, the judgment should award him all costs against the defendants.

J. W. S. CLEMENTS, POLIN & POLIN and S. A. RUSSELL for appellants.

W. C. McCHORD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming on the original; reversing on the cross-appeal.

This appeal presents a controversy over the title to less than a quarter of an acre of land, the value of which admittedly does not exceed five dollars. Appellants and appellee own adjoining tracts of land through both of which runs, from east to west, the Springfield and Loretto turnpike, leaving a part of the land of both on each side thereof. The single matter to be decided is as to the true location of the line separating their lands; it being the contention of appellants that if correctly located it will give them the ground in controversy, and that of appellee that it will give it to him.

The action was one in ejectment, brought by appellee against appellants in the court below, the petition alleging the former's ownership of the land and appellants' wrongful inclosure and possession of the parcel in controversy. The answer and counter-claim of appellants denied appellee's title, and, among other matters

of defense, alleged title in themselves. By consent of the parties a jury was waived and the case was tried by the court, resulting in a judgment in behalf of appellee to the effect, viz:

"That the present true line between the lands of plaintiff and defendants on the south side of the Springfield and Lebanon turnpike is a straight line from the corner stone at the schoolhouse to the center of three stones on the north side of said turnpike. (2) That the present true line between the lands of plaintiff and defendants on the north side of said turnpike is a straight line from the center of said three stones on the north side of said turnpike to a stone at what is called the hickory corner, thence a straight line to the center of a large white oak. (3) That defendants recover of plaintiff any and all lands inclosed by plaintiff's fence on the east side of said first named line, that is, on the east side of said line from the schoolhouse corner to the center of said stone on the north side of pike, and that said plaintiff recover of defendants any and all the lands on the west side of the line running from the center of said stone to the stone at said hickory and thence to the center of said oak tree. (4) It is ordered and adjudged by the court that George Newbolt, of Marion county, Kentucky, be and he is hereby appointed to go upon said lands as soon as may be and plant 'stobs' thereon at intervals at not more than one hundred yards along same; and plaintiff and defendants are given 18 months thereafter in which to place their respective fences on the line as located. (5) It is adjudged that plaintiff pay his own cost herein expended and that defendants pay their own costs herein expended."

It appears from the record that the land now owned by appellee on both sides of the turnpike was conveyed him by C. M. Wright; that on both sides of the turnpike now owned by appellants was inherited by them from Mike Murphy, deceased, a brother of one of them and an uncle of the other; that such part of their land as lies north of the turnpike was conveyed Mike Murphy by R. B. Montgomery and that on the south side of the pike was conveyed him by J. T. Wright. The location of the lands referred to may, in some sort, be understood from the rough plat here given:

We are convinced from a careful reading of the record before us that the original and true location of the line dividing the lands of appellee and appellants is as determined by the circuit court; that is, that it begins at an undisputed corner, a stone near the schoolhouse south of the turnpike, running thence in a northerly direction on a practically straight line to a stone on the north or northwest side of the turnpike ten links from the center thereof, known as the C. M. Wright and R. B. Montgomery corner; thence in a north or northwesterly direction to a stone near a hickory; thence north in a straight line to a large white oak. Appellee's land lies on the west side of this line; appellants' land on the east side thereof.

The stone corner at the schoolhouse, the stone at the hickory north of the pike and the white oak north of the latter point, are undisputed corners or objects. The only controversy is as to the location of the planted stone at the turnpike, and that this stone was correctly located by the judgment of the circuit court is, in our opinion, free of doubt. If this be true, it follows that the location of the entire line was correctly determined by the judgment of that court.

The importance of establishing this corner is apparent because it was the corner to the land of appellee's vendor, C. M. Wright, the former owner of the land on both sides of the turnpike west of the line in dispute, and that of R. B. Montgomery, Mike Murphy's vendor, and the former owner of that part of appellants' land lying north of the turnpike and east of the line in dispute, and is so referred to and identified in the deed from C. M. Wright to appellee and in that from R. B. Montgomery to Mike Murphy; and likewise in the deed from T. J. Wright conveying to Mike Murphy the land now owned by appellants which lies south of the turnpike and east of the line in dispute. The controlling character of this corner is not denied by appellants, but it is their contention that instead of this stone corner's being ten links from the center of the pike, as fixed by the judgment appealed from, its true location is ten or twelve feet west thereof, which, if true, would so locate the line of division as to leave on their side thereof the land in controversy.

The stone corner at the pike, as located by the judgment, accords with the calls for that corner, both as to

course and distance, made by the several deeds introduced in evidence. It also appears that in 1895 a dispute arose between Mike Murphy, the then owner of appellants' lands, and appellee and his brother, the latter then being part owner of the land now owned by appellee, over the location of the line dividing these same lands; and that Murphy then brought an action in ejectment against the McIntires to establish his ownership to the same strip of land involved in the instant case. The trial of that case resulted in a verdict and judgment in behalf of appellee and his brother, which fixed the stone corner in the turnpike and entire line as established by the circuit court in the instant case. That judgment appellee's reply to appellants' answer and counterclaim pleads as a bar and estoppel to the claims asserted by the latter to the land in controversy. In addition, after the death of Mike Murphy, a suit was brought by his administrator against the heirs at law for a settlement of his estate, allotment of dower to his widow and division of his lands among his heirs at law. Both in the petition and in the report of the commissioners making the allotment of dower and division of the lands, the stone corner in the pike was fixed as established by the judgment in the instant case.

In view of the satisfactory character of the evidence referred to, conducing to establish the stone corner in the turnpike as fixed by the judgment of the circuit court, it is unnecessary to discuss the oral testimony heard on the trial, except to say that such of it as tended to show the corner in question to be located as claimed by appellants, though contradictory of that furnished by appellee's witnesses, is wholly insufficient to overthrow the record evidence sustaining appellee's contention. Moreover, it appears that the judge of the circuit court, after the introduction of all the evidence, went upon the ground, in company with the parties to the action and their attorneys, and made a personal inspection of the land in controversy, the line in question and the several corners and objects therein called for, which gives added weight to the conclusions expressed in the judgment.

The only thing that gave cause for the controversy with respect to the stone corner at the turnpike, arose out of the fact that the stone originally planted there, ten links from the center of the turnpike, as a corner of the line between C. M. Wright and R. B. Montgomery,

was broken off below the surface of the ground shortly before the institution of this action, or between its institution and the trial of the case, by certain workmen in widening and reconstructing the turnpike at that point, by direction of the Washington county fiscal court. The workmen did not know that the stone planted in the edge of the pike was a corner, and were advised by one Miles, who was at that time in the employ of the appellant Kate Shanahan, to cut deep at the place where the stone was planted, because he wanted to put a culvert there. Miles did not tell the workmen that the stone, the removal of which he advised, was a corner stone, nor did he thereafter make a culvert there, as he professed he wished to do. One of the workmen, Coyle, stated that he put the stone back in the place from which it had been removed by the graders. Another witness, Young, testified that Miles told him he took the stone away from where Coyle had put it; and the appellant Kate Shanahan admitted on cross-examination that Miles did remove the stone after it was reset in the old place by Coyle. But after all, there was no difficulty in locating the place where the stone had originally stood, as it was ten links from the center of the pike, and the commissioner appointed by the court to further mark the line between the lands of appellee and appellants, as established by the judgment, upon digging down at the place from which the stone had been removed, found the lower part from which it had been broken, and by putting to that the part of the stone which had been removed and set up elsewhere, he found that they fitted together completely. As the precise spot at which the stone stood before its removal by Miles was so well identified, all doubt as to its being the corner of the C. M. Wright land called for by the Montgomery deed was removed. It follows that in fixing the line from the stone at the schoolhouse to the stone in the turnpike, the circuit court made no mistake, and even if there were any conflict between the courses and distances given in the deeds mentioned and the objects called for, under the well-known legal rule applicable in such state of case the objects called for, if well identified by the proof, would control in establishing the line.

But if the reasons already advanced for sustaining the line of division between the lands of appellee and

appellants as established by the circuit court, were wanting, it would, nevertheless, have to be sustained upon the ground that appellants are concluded by the judgment of the same court in the action brought against appellee and his brother by Mike Murphy in 1895, involving the title to the same land, which established the line as fixed by the judgment in this case. As appellants claim title to the land in controversy through Mike Murphy, they can show no better right thereto than was shown by him in the former action; and as the judgment in that action would bar any recovery of the land by him, if he were living and suing for it instead of appellants, it will so effectually bar such recovery by them.

Although by the judgment of the circuit court appellee recovered practically all of the land in controversy, because of its permitting appellants to retain, as recited therein, "a small bit" of land near the schoolhouse stone corner south of the pike, which, though inclosed by appellee's fence, was held to be east of the division line, it was adjudged by the court that each of the parties pay his and their own cost expended in the action. From so much of the judgment as required appellee to pay his own cost he has prosecuted a cross-appeal.

The circuit court erred in adjudging that appellee pay his own cost. In ejectment the plaintiff's recovery of any part of the land entitles him to a judgment against the defendant for his costs. Civil Code, section 125, subsection 2; Childers v. Belcher, 142 Ky., 605. This also seems to be the rule in all actions ordinary, where the defendant is a necessary party and resists the plaintiff's demand, and the latter recovers any part of such demand. Section 889, Kentucky Statutes. Brandies v. Stewart, 1 Met., 395. Had this been an action in equity the judgment as to the costs would also have been unauthorized, for the infinitesimal quantity of land adjudged the appellants would not have presented any equitable ground for relieving them of the payment of appellee's cost.

The error in the judgment referred to will necessitate a reversal of it on appellee's cross-appeal, but, as on the return of the case to the circuit court the error can readily be corrected by that court without the granting of a new trial, by setting aside so much of the judgment as required appellee to pay his own cost and amending it by giving him judgment against appellant for same, no necessity will arise for disturbing the judgment in other

respects. For the reasons indicated the judgment is affirmed on the original appeal and reversed on the cross-appeal, and the case remanded to the circuit court, with directions to correct the judgment in conformity to the opinion.